# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| SECURA Insurance Company, f/k/a SECURA INSURANCE, a Mutual Company, a Wisconsin insurance company,<br>    Petitioner,<br><br>vs.<br><br>GREAT PLAINS MANAGEMENT, LLC an Illinois corporation,<br>JAN HUEBER deceased,<br>JEFF DACE, JAY FLORA, and<br>HAROLD LEE<br>    Respondents,<br><br>and<br><br>SPRING LAKE PORK, LLC a Missouri corporation,<br>    Necessary Party. | No. |

## PETITION FOR DECLARATORY JUDGMENT

NOW COMES the Petitioner, SECURA Insurance Company, f/k/a SECURA INSURANCE, a Mutual Company ("SECURA"), by its undersigned attorneys, and for its Petition for declaratory judgment regarding insurance policies issued to GREAT PLAINS MANAGEMENT, LLC ("GPM"), states as follows:

## NATURE OF THIS PROCEEDING

1. This is a diversity action pursuant to 28 U.S.C. § 1332. In Count I, SECURA seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 confirming that the grant of commercial general liability coverage in SECURA's policies does not provide any coverage to GPM, JAN HUEBER deceased, JEFF DACE, JAY FLORA, and HAROLD LEE (hereinafter referred to as "the INSUREDS") for the claims asserted against them in a lawsuit filed by SPRING LAKE

1

PORK, LLC ("SLP") regarding alleged mismanagement of a pig farm in Vandalia, Missouri. In Count II, SECURA seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 confirming that the separate grant of coverage in SECURA's policies provided through the Agricultural Consulting Services – Property Damage Endorsement Form in SECURA's policies does not provide coverage to the INSUREDS for the claims asserted against them in the lawsuit filed by SLP. Pleading in the alternative, in Count III, SECURA seeks a declaratory judgment confirming the amount of the maximum limit of liability under that Agricultural Consulting Services – Property Damage Endorsement Form available to the INSUREDS for the claims asserted against them in the lawsuit filed by SLP.

## PARTIES, JURISDICTION AND VENUE

2. Effective January 1, 2021, SECURA INSURANCE, A Mutual Company changed its name to SECURA Insurance Company ("SECURA"). SECURA is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Winnebago County, Wisconsin. SECURA is authorized and licensed to issue policies of insurance in the State of Illinois.

3. GPM is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Creston, Ogle County, Illinois. GPM's operations involve production management services for certain farms.

4. JAN HUBER, deceased, was an individual residing at 1766 Woodlawn Road, Steward, Lee County, Illinois, who had served in the role of General Manager, Managing Member and/or Co-Owner of GPM.

5. JEFF DACE is an individual residing at 436 Pombrook Drive, Princeton, Bureau County, Illinois, who has served in the role of Manager of Field Operations for GPM.

6. JAY FLORA is an individual residing at 3210 Lily Lane, Marshalltown, Iowa, who has served in the role of an employee of GPM.

7. HAROLD LEE is an individual residing at 126 6th Street NE, Le Mars, Iowa, who has served in the role of an employee of GPM.

8. SLP is a Limited Liability Company organized and existing under the laws of the State of Missouri, with its principal place of business in Vandalia, Ralls County, Missouri.

9. SLP filed a First Amended Complaint against the INSUREDS pending in the United States District Court for the Eastern District of Missouri, Northern Division under the caption Spring Lake Pork, LLC vs. Great Plains Management, LLC, Jan Huber, Jeff Dace, Jay Flora, and Harold Lee, Case No. 2:19-cv-00018-CDP ("the SLP v. GPM Lawsuit"). SLP is a necessary party to the declaratory judgments requested by SECURA in Counts I and II below because SLP has a tangible interest in the outcome of those declaratory judgments, and should be bound to this District Court's declaratory judgment rulings.

10. There is complete diversity of citizenship among all parties and the amount in controversy in this case exceeds $75,000.00, thus original jurisdiction in this District Court is proper pursuant to 28 U.S.C. § 1332.

11. This District Court further has jurisdiction over the declaratory judgments requested in Counts I, II and III below pursuant to 28 U.S.C. § 2201 for the purpose of resolving an actual controversy between SECURA, the INSUREDS and SLP.

12. The currently pending SLP v. GPM Lawsuit does not involve any of the declaratory judgment issues that are involved in this lawsuit between SECURA, the INSUREDS and SLP.

13. Venue in this District Court is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because: (1) GPM's residence is, and JAN HUBER's prior residence was, within the jurisdiction

of this District Court; and (2) a substantial part of the events giving rise to this action occurred within the jurisdiction of this District Court, including the following activity: SECURA's policies were issued to GPM through an Illinois broker, in Creston, Ogle County, Illinois.

14. The insurance coverage issues involved in all of the Counts in this action are governed by Illinois law. Illinois has the most interests in the resolution of the coverage declaratory judgment issues presented herein.

## FACTS REGARDING THE CLAIMS AT ISSUE IN THE SLP v. GPM LAWSUIT

15. A true and accurate copy of the First Amended Complaint filed in the SLP v. GPM Lawsuit is attached hereto as **Exhibit A**.

16. In that First Amended Complaint, SLP alleges that it entered into a Management Agreement on or about July 25, 2014 for GPM to serve as the manager of SLP's swine operations at SLP's farm in Vandalia, Missouri, with certain projected volume and earnings goals.

17. In that First Amended Complaint, SLP alleges that GPM agreed to manage SLP's swine operations at the farm using a "NEDAP" system for breeding, feeding, and other swine management. SLP further alleges that GPM represented that it was experienced and skilled with the "NEDAP" system.

18. In that First Amended Complaint, SLP alleges that GPM had originally recommend to begin SLP's swine operations at the farm by acquiring a total of 5,600 "F1 gilts", in two phases of 2,800 each.

19. In that First Amended Complaint, SLP alleges that GPM changed that recommendation to advise that SLP should purchase the initial stock of gilts in one single phase, instead of two phases. Thereafter, GPM advised that 5,600 "F1 gilts" could not be acquired at

once, and that it was necessary to purchase an equal mix of "F1 gilts" and "F2 gilts" to begin SLP's swine operations at the farm.

20. In that First Amended Complaint, SLP alleges that GPM represented that there would be no difference in the number of offspring produced by the "F1 gilts" and "F2 gilts" respectively, and that SLP's swine operations at the farm would still meet the projections that had been based on an initial stock of "F1 gilts" only.

21. In that First Amended Complaint, SLP alleges that testing conducted in the Fall of 2015 revealed an outbreak of Porcine Reproductive & Respiratory Syndrome ("PRRS") among the sow population at SLP's farm.

22. In that First Amended Complaint, SLP alleges that SLP sent two letters dated October 15, 2015 and June 17, 2016 (*see* Exhibits 2&3) to GPM in which SLP expressed its conclusion that it was suffering damages in that the total number of pigs weaned was failing to meet the agreed upon goals set pursuant to the Management Agreement, even after allowances for the impact of the PRRS outbreak. On November 9, 2016, SLP gave GPM written notice that SLP was terminating the Management Agreement (*see* Exhibit 4).

23. In that First Amended Complaint, SLP alleges that GPM breached the Management Agreement in failing to meet the performance goals, misrepresented its competence and abilities, and breached a fiduciary duty in the management of the swine operations at SLP's farm.

24. In that First Amended Complaint, SLP seeks recovery under negligence, contract, fraud, warranty, RICO and fiduciary theories of recovery. Through an interlocutory order dated June 30, 2020, the trial court dismissed the warranty and RICO counts asserted by SLP.

25. In that First Amended Complaint, SLP claims that its compensatory damages exceed $3,000,000, as the alleged difference between actual earnings and projected earnings. SLP also seeks punitive damages in the amount of $3,000,000.

## FACTS REGARDING INSURANCE POLICIES THAT SECURA ISSUED TO GPM

26. SECURA issued to GPM as the Named Insured a General Liability Policy number CP 3227201 with annual effective dates in yearly policy periods beginning on August 18, 2014 through August 18, 2018 (SECURA's Primary Policies").

27. SECURA does not attach full copies of SECURA's Policies as exhibits to this pleading, but will produce full copies of them as part of its Rule 26 Initial Disclosures.

28. Each and all of SECURA's Policies provide a grant of commercial general liability coverage through the Commercial General Liability Coverage Form CG 0001 1001, a true and accurate copy of this form is attached hereto as **Exhibit B**.

29. Each and all of SECURA's Policies provide a separate grant of liability coverage through the Agricultural Consulting Services – Property Damage Form AGL 0406 1001, a true and accurate copy of this form is attached hereto as **Exhibit C**.

30. JAN HUEBER deceased, JEFF DACE, JAY FLORA, and HAROLD LEE may qualify for the status of "insured", pursuant to Paragraph 1. of Section II – Who is An Insured in the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies, for claims that arise out of their duties as one of GPM's managers, officers, directors and/or employees.

## COUNT I – DECLARATORY JUDGMENT NO COVERAGE UNDER THE COMMERCIAL GENERAL LIABILITY FORM CG 0001 1001

31. SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 30 as though fully set forth herein.

32. The Insuring Agreement in the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies provides as follows:

> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for bodily injury" or "property damage" to which this insurance does not apply.
> \*   \*   \*
> a. This insurance applies to "bodily injury" or "property damage" only if:
>    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> \*   \*   \*

33. The Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies defines the terms "occurrence" and "property damage" as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> \*   \*   \*
> 17. "Property damage" means:
>    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> \*   \*   \*

34. Many of SLP's claimed damages in the <u>SLP v. GPM</u> Lawsuit do not meet the definition of "property damage" as that term is defined in the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies.

7

35. Even if the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit allege "property damage" caused by an "occurrence", the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies precludes coverage for those claims thereunder through the following relevant exclusions:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> \* \* \*
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement…
>
> \* \* \*
>
> **j. Damage to Property**
>
> "Property damage" to:
>
> \* \* \*
>
> **(4)** Personal property in the care, custody or control of the insured.

36. SLP has alleged in the First Amended Complaint in the <u>SLP v. GPM</u> Lawsuit that GPM had exclusive care, custody or control over all of the swine animals at SLP's farm.

37. Exclusion 2.b and Exclusion 2.j.(4) apply to preclude coverage under the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies for all of the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit.

WHEREFORE, SECURA requests that this District Court enter an order declaring the following:

(1) That Exclusion 2.b and Exclusion 2.j.(4) apply to preclude coverage under the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies for all of the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit;

(2) That SECURA does not owe any coverage to the INSUREDS under the Commercial General Liability Coverage Form CG 0001 1001 in SECURA's Policies for the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit; and

(3) And awarding any further relief that this District Court deems fit to provide under equity.

**COUNT II – DECLARATORY JUDGMENT
WRITTEN DOCUMENTATION CONDITION
AGRICULTURAL CONSULTING SERVICES – PROPERTY DAMAGE
FORM AGL 0406 1001**

38. SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

39. The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices provides as follows:

**A. Coverage**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" arising out of the rendering or failure to render "crop consulting", "soil services consulting", or "farm management consulting services described in the SCHEDULE.

With regards to coverage provided by this Endorsement, "property damage" also means:
**1.** reduced crop yields;
**2.** stunted livestock growth; and
**3.** reduced milk production
from past production results or from production projections indicated in your written records of consulting services performed.

40. The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices contains the following relevant definition:

> "Farm management consulting" means services that provide advice or recommendations on:
> a. Livestock feed – including nutritional content of total mixed rations or other feed, distribution and formulation of livestock feed;
> b. Manure management; and
> c. Other agricultural consulting services not specifically described elsewhere in the Endorsement.

41. The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices contains the following relevant condition:

> **C. Conditions**
>
> The following additional condition applies to the insurance provided by this endorsement.
>
> 1. Written documentation
>
>    You must maintain written documentation of all advice or recommendations provided by your consulting services.

42. Deposition testimony and other evidence gathered in the <u>SLP v. GPM</u> Lawsuit reflects that GPM failed to maintain written documentation of the advice it provided to SLP; specifically, that GPM failed to maintain written documentation of the volume and earnings goals that GPM projected for the swine operations at SLP's farm.

43. Condition 1. applies to preclude coverage under the Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Policies for all of the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit.

WHEREFORE, SECURA requests that this District Court enter an order declaring the following:

(1) That Condition 1. applies to preclude coverage under the Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Policies for all of the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit;

(2) That SECURA does not owe any coverage to the INSUREDS under the Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Policies for the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit; and

(3) And awarding any further relief that this District Court deems fit to provide under equity.

### (*PLEADING IN THE ALTERNATIVE TO COUNT II*)
### COUNT III – DECLARATORY JUDGMENT
### $1 MILLION AGGREGATE LIMIT OF LIABILITY UNDER THE AGRICULTURAL CONSULTING SERVICES – PROPERTY DAMAGE FORM AGL 0406 1001

44. SECURA repeats and re-alleges the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

45. Paragraph A.2 in the Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices, which is quoted in full above, explains that the only potentially relevant covered "property damage" in the context of the claims asserted by SLP in the <u>SLP v. GPM</u> Lawsuit is the allegation of "stunted livestock growth… from past production results of from production projections indicated in [GPM's] written records of consulting services provided."

46. Many of SLP's claimed damages in the <u>SLP v. GPM</u> Lawsuit do not meet the definition of "property damage" as that term is defined in the Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices.

47. The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices contains the following paragraph:

**D. Limits of Insurance**

1. The Each Occurrence Limit stated in the SCHEDULE above is the most we will pay for the sum of all "property damage" arising out of any one "occurrence" subject to the Aggregate Limit shown in the SCHEDULE above. For the purpose of determining the limits of insurance for damages covered by this endorsement, any act or omission together with all related acts or omissions in furnishing these services to any one person will be considered one "occurrence."
2. The Aggregate Limit shown in the SCHEDULE is the most we will pay for the sum of damages covered under this endorsement during the policy period.
3. The limits of insurance shown in the SCHEDULE above does not apply as additional limits of insurance. The limits of insurance shown in the Declarations are inclusive of the limits of insurance in the SCHEDULE.

48. The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in SECURA's Polices also contains the following provision at the end of the endorsement form:

All other terms and conditions of this policy not in conflict with the terms and conditions of this Endorsement shall continue to apply.

49. Each and all of SECURA's Policies include an endorsement form ILE 0465 1009 which states that, if two or more coverage forms in SECURA's Policies apply for the same claim, the follow applies:

… the maximum Limit of Insurance under all such coverage parts or policies combined shall not exceed the highest single Limit of Insurance under any applicable coverage part or policy.

50. The Insuring Agreement in the Commercial General Liability Coverage Form CG 0001 1001 also contains the following relevant provisions:

b. This insurance applies to "bodily injury" or "property damage" only if:
   \* \* \*
   (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured… knew that the "bodily injury" or "property

12

    damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period that the "bodily injury" or "property damage" had occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured… includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured … :
    (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

51. In First Amended Complaint, SLP alleges that SLP sent two letters dated October 15, 2015 and June 17, 2016 (*see* Exhibits 2&3) to GPM in which SLP expressed its conclusion that it was suffering damages, *i.e.,* SLP alleged that the total number of pigs weaned failed to meet the agreed upon goals set pursuant to the Management Agreement.

52. Deposition testimony and other evidence gathered in the <u>SLP v. GPM</u> Lawsuit further reflects that SLP's alleged damages, *i.e.,* total number of pigs weaned failing to meet the agreed goals and expectations, first began to occur in the SECURA policy period in effect from August 18, 2015 to August 18, 2016.

53. Pursuant to the provisions quoted in Paragraph 50 above, the claims that SLP asserts in the <u>SLP v. GPM</u> Lawsuit are covered, if at all, only under the SECURA policy period in effect from August 18, 2015 to August 18, 2016, and not any other policy period.

54. SLP has taken the position with GPM and SECURA that the claims that it asserts in the SLP v. GPM Lawsuit allege multiple occurrences. However, the claims that SLP asserts in the SLP v. GPM Lawsuit are deemed to be only one "occurrence" under Paragraph D.1. of the Agricultural Consulting Services – Property Damage Form AGL 0406 1001 because those claims all arise out of one set of GPM's related acts or omissions in furnishing farm management services to SLP.

55. Regardless of any dispute regarding the number of "occurrences", the claims that SLP asserts in the SLP v. GPM Lawsuit are subject to only one Aggregate Limit of Insurance under The Agricultural Consulting Services – Property Damage Form AGL 0406 1001.

56. The $1 million Aggregate Limit of Insurance available under The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in the SECURA policy in effect from August 18, 2015 to August 18, 2016 is partially exhausted by a $100,000.00 indemnity claim payment that SECURA previously made on behalf of GPM for a separate claim #C0130412.

57. A true and correct copy of the SECURA Policy Loss History Page reflecting the $100,000.00 indemnity claim payment that SECURA previously made on behalf of GPM for the separate claim #C0130412 is attached hereto as **Exhibit D**.

58. The most that SECURA could ever have to indemnify the INSUREDS for the claims that SLP asserts in the SLP v. GPM Lawsuit is limited to the $900,000.00 amount of the "Aggregate Limit" that is remaining under The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in the SECURA policy in effect from August 18, 2015 to August 18, 2016.

WHEREFORE, SECURA requests that this District Court enter an order declaring the following:

(1) The most that SECURA could ever have to indemnify the INSUREDS for the claims that SLP asserts in the SLP v. GPM Lawsuit is limited to the $900,000.00 amount of the "Aggregate Limit" that is remaining under The Agricultural Consulting Services – Property Damage Form AGL 0406 1001 in the SECURA policy in effect from August 18, 2015 to August 18, 2016; and

(2) And awarding any further relief that this District Court deems fit to provide under equity

Respectfully submitted,

**STONE & JOHNSON, CHTD**

By: \s\ Dawn M. Gonzalez_____
Attorneys for Petitioner,
SECURA Insurance Company, f/k/a
SECURA INSURANCE, a Mutual Company

Dawn M. Gonzalez, Esq.
STONE & JOHNSON, CHTD
111 West Washington, Suite 1800
Chicago, Illinois 60602
dgonzalez@stonejohnsonlaw.com
(312) 332-5656
Atty No. 44540

## **CERTIFICATE OF SERVICE**

I, the undersigned, being first duly sworn upon oath, depose and state that I caused to be served the foregoing <u>above-mentioned document</u> by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Western Division, a copy of which was then forwarded to each attorney of record by CM/ECF on <u>September 28, 2022</u>.

<u>\s\ Tammy McCann</u>